EDE, Appellant, v. WARD et al., Respondent.

(152 N. W. 101.)

(File No. 3625.    Opinion filed April 12, 1915.    Rehearing denied May 7, 1915.)

**Vendor and Purchaser—Recovery Back of Purchase Money—Sale Contract—Failure to Comply, on Ground of Fraud—Fraud Without Injury—Directing Verdict.**

Where, in a suit to recover back money alleged to have been paid in furtherance of a land purchase, the evidence showed that plaintiff had a client who wished to purchase land, to whom he desired to sell at a profit, and sought defendants' aid to procure contracts from the land owners to that end, that defendants undertook to procure title for plaintiff's use, and were able to do so; that, relying upon their proposition to procure title, plaintiff contracted in writing with defendants, whereby they obligated themselves to procure title for plaintiff, that defendants demanded a cash payment to themselves of $1,000,

which plaintiff paid, that shortly thereafter plaintiff's client
advised him that he would not take the land, whereupon plain-
tiff asked defendants to return to him the money paid, that they
returned $600, advising him that the land owners would not
return the balance, and at defendants' request plaintiff sur-
rendered the contract. Defendants' statement as to what they
had done with the money, was false. **Held,** that plaintiff could
not recover from defendants the balance of the cash payment;
that the false statement did not concern plaintiff, since, if the truth
had been told it would have constituted no ground for plain-
tiff's demand of more money than he received, therefore he was
not injured in his legal rights by the false statements; and trial
court properly directed verdict for defendants.

Polley, J., dissenting.

Appeal from Circuit Court, Beadle County. Hon. ALVA E.
TAYLOR, Judge.

Action by Ernest D. Ede against Harry J. Ward and an-
other, to recover back purchase money under an alleged pur-
chase of lands. From a judgment for defendants, and from an
order denying a new trial, plaintiff appeals. Affirmed.

*Ernest D. Ede,* and *Null & Royhl,* for Appellant.

*Gardner & Churchill,* and *B. B. McClaskey,* for Respondents.

Respondents cited: Sioux Falls Banking Co. v. Kendall, 6
S. D. 543.

SMITH, J. Appeal from an order directing a verdict for
defendants. Plaintiff in his complaint alleges that the defendants
were his special agents for the purpose of securing for him a
fee-simple title to a half section of land; that defendants were
not the owners thereof; that he placed in defendants' custody
and control as his agents the sum of $1,000, to be paid to the
owners of said real estate, as partial payment of the purchase
price; that the defendants rescinded and nullified the agreement
of agency with the plaintiff under which they had agreed to de-
liver the money so placed in their control, and returned to plain-
tiff the sum of $600 thereof, at which time they represented that
they had paid to the owners of said real estate the balance of
$400; that defendants did not pay to the owners of said real
estate the sum of $400, but are now in possession thereof; that
plaintiff has demanded the return of said sum. The complaint
alleges, in further detail, that prior to said transaction, plaintiff
had been desirous of obtaining the title to said premises; that

.the defendants falsely and fraudulently, with intent to cheat and defraud him, represented that they could not obtain for him a title to said premises because of a sale pending between the owners thereof and third persons, and that to secure title, it was necessary that plaintiff forthwith pay to defendants the sum of $1,000, to be delivered by them to the owners of said premises; that these representations were false; that no sale was pending between the owners and third parties; and that it was not necessary that plaintiff cause to be paid the said sum of $1,000, but that plaintiff, relying upon such representations, paid to them $1,000, to be delivered to the owners of said premises; that thereafter defendants returned to plaintiff $600, and represented that they had delivered to the owners of said premises $400, and that said owners held and owned the same and had placed it to the credit of plaintiff; that said defendants were not required to pay to the owners any part of said $1,000, but have held and claimed $400 of it as their own.. Defendants pleaded a general denial, and also certain facts by way of defense, which are not material on this appeal. In support of the allegations of the complaint, appellant testified: That about the 1st of February, 1911, he went to defendant Ward's office and asked him whether he could procure for him title to the half section of land. That Ward said he could get it for him for $46 per acre. That about February 16th plaintiff gave Ward a form of contract for the owner to sign, and Ward said the owners would not tie up the title without a cash deposit. That plaintiff did not know who owned the half section. Ward said he was the representative of the owners of the land, and could get the contract. That he called Ward to his office on the morning of February 27th, and asked him to get a contract signed by the owners. Ward said they would not sign without a cash deposit. That witness then showed Ward a telegram directing him to have a contract signed by the owners, in favor of one Calkin, as purchaser of the land; that Calkin was a prospective purchaser, at the time plaintiff first talked with Ward about the land. Ward said the owners would not tie up the land without a cash deposit. If he wanted the land, they could get it for him. That it would require $1,000, $250 for one owner, and $750 for the other. That thereupon checks in said amounts were made out and delivered to Ward.

At that time plaintiff did not know who were the owners of the land. That Ward came to witness' office that afternoon with an abstract of title to a quarter section of the land, and two forms of contracts ready for signature. That plaintiff looked over the contracts and said he could not use them. That the telegram required the contracts to be signed by the owners of the land, and the proposed contracts were signed by Ward and Brawner, and did not bind the owners. Ward said it would take a day or two to get contracts signed by the owners. Witness said he could not use the contracts. Ward replied:

"I have got the owners tied down all right for you. They will stand pat. This is all that I can do for you today."

Gave Ward the checks the morning of February 27th, and signed the contracts between himself and Ward and Brawner the evening of the same day. Next saw Ward March 10, 1911. Showed him a letter received from Mr. Coon, dated February 28th, wherein plaintiff was advised that Calkin, the purchaser, had backed out on the sale. Asked Ward to go to the owners and see what he could do about getting the money back. Ward read the letter and said he would see what could be done—he did not know. Left witness' office and returned in about half an hour. Said he had got back $600 and could not get back any more. That the owners of the land would stand pat, and plaintiff could go down and close up the deal if he wanted to, but this was all he could get back. He presented the $750 check and said:

"You give me a check for $150 and that will repay me for the money I put down for you."

Witness gave him a check for $150 and received back the $750 check. Ward asked for the land contracts and the witness delivered them back to him. Maud Taft, stenographer in plaintiff's office, testified to substantially the same facts. Plaintiff's witness Plumber testified: That he was authorized to represent Clara Hughey, owner of one of the quarter sections. That Ward inquired of him if the property was for sale; he told him it was, at $45 per acre net to Miss Hughey. March 10th Ward called again, and stated that the deal had fallen through, and witness returned him the check for $750, all the money that was paid. Did not promise to pay Ward anything if the property was

not sold. That Miss Hughey during February, March, and April was able, ready, and willing to convey to the defendants or their nominee a fee-simple title upon receipt of the purchase price. John E. Ward testified as plaintiff's witness that he owned one of the quarter sections of land; gave Harry Ward a price of $44 an acre net; no dispute about the terms; that he never received any money or check from Harry Ward. This is substantially the whole evidence offered at the trial.

The question presented is whether the plaintiff was entitled to a verdict upon these facts. Briefly stated, the evidence shows that plaintiff had a client in Nebraska who wished to purchase the land in question; that plaintiff desired to procure contracts from the owners of the land, that he might sell it to the proposed purchaser at a profit, and to that end sought the assistance of defendants; that defendants undertook to procure title for plaintiff's use, and were able to do so; that relying upon their proposition to bind themselves to procure such title, plaintiff entered into a written contract with defendants, whereby they obligated themselves to procure and deliver to plaintiff such title; that defendants demanded a cash payment to themselves of $1,000 on account of the purchase price, to which plaintiff assented; that shortly thereafter appellant was advised that his Nebraska purchaser would not take the land, and thereupon asked defendants to return to him the money paid them; that they returned $600; advising him that the owners of the land would not return the remaining $400, and at their request plaintiff surrendered the contracts.

It appears from the record that the defendants were ready, able, and willing to procure for and deliver to plaintiff title to the land, upon the terms and conditions specified in the contracts, had plaintiff so desired. Defendants held plaintiff's contracts to take the land and pay the purchase price, and so long as they were ready, able, and willing to fulfill that contract, it was entirely immaterial to plaintiff what defendants had done with the money placed in their hands. Their obligation was complete, and plaintiff had a right to enforce it, had he so desired. Plaintiff could not have recovered back the money paid them. Therefore when defendants surrendered and abandoned their right to enforce the contracts against plaintiff, it could be done

only on such terms as defendants saw fit to prescribe. It was agreed that the contracts should be surrendered, and these mutual obligations abandoned, upon the return to plaintiff of $600 of the money paid to defendants as part of the contract price. If the defendants lied to plaintiff as to what they had done with the money, that was a matter which did not concern him, and in which he had no financial interest. If they had told plaintiff the truth, it would have afforded him no legal ground for demanding more money than he actually received, and therefore he could not be injured in his legal rights by false statements as to the disposition defendants had made of the money. Appellants urges that he expected the owners of the land to credit him with the $400 on the purchase price of the land. But the record fails to show that he ever sought to, or even desired to, consummate a purchase of the land from the owners. But this is immaterial in any event. The adjustment between plaintiff and the defendants, when the contracts were surrendered and a portion of the money returned to plaintiff, was final and conclusive between them.

The judgment and order of the trial court must therefore be affirmed.

POLLEY, J. (dissenting). The trial court should have directed a verdict for plaintiff. The money in dispute was obtained by defendants from plaintiff by falsehood and misrepresentation. This fact is conceded by defendants themselves and is recognized by the court in the majority opinion. But, the money having been advanced by palintiff to defendants to be used for a specific purpose, the title thereto remained in plaintiff until it was used for the purpose for which it was advanced. When it was found that the money could not be used for the purpose for which it was advanced, defendants should have returned it to plaintiff. Instead of doing this, they told plaintiff it had been used as he had directed, but that they would try to get it back for him. They then told him they were able to get back $600, which they gave him, but said they could not get the remaining $400. This statement was absolutely false, the money being in defendants' possession at that particular time. When this fact was discovered, defendants should have been compelled to return the money to plaintiff.